UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRANCOIS P. GIVENS, | ) | CV F- 04-6288 AWI DLB P |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | WITH LEAVE TO FILE THIRD |
| v. | ) | AMENDED COMPLAINT |
| | ) | |
| DERRAL G. ADAMS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff is a state prisoner proceeding pro per with a civil rights action pursuant to 42 U.S.C. section 1983. Pending before the Court is the second amended complaint, filed June 17, 2005. July 12, 2004. On March 7, 2007, the Court granted plaintiff's request to file a third amended complaint. However, on March 30, 2007, plaintiff filed objections to the Court's order denying his motion for preliminary injunction in which he requested that the court screen the second amended complaint.

**BACKGROUND**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2). If the Court determines that the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000) (en banc).

In the instant case, plaintiff brings action against former Director Woodford; Secretary Hickman; Warden D. Adams; Associate Warden Allison; K. Santaro; Appeals Coordinator Cooper; Captain J. Lais; R. Wessel; Lieutenant Field; Sergeant Kamal; Correctional Counselor T. Oehlert; Librarian Klippenstein; Drs. Smith, Garcia, and Snow; the Estate of Dr. Wong; Nurse Ruff; and Correctional Officers Ramos, Harris and Soloroa.

**A.     Deliberate Indifference to Serious Medical Needs**

*Claim 1*

Plaintiff claims that on October 25, 2003, he suffered a severe knee injury while on the B-Yard facility. Plaintiff saw defendant Dr. Wong (deceased) a few days later who ordered x-rays, ibuprofen and provided plaintiff with a cane. Plaintiff complains that Dr. Wong did not initially order a lower bunk chrono. However, plaintiff acknowledges that Dr. Wong later authorized a lower bunk chrono.

At Dr. Wong's direction, plaintiff saw defendant Dr. Smith, an orthopedic specialist, on January 7, 2004. Dr. Smith recommended arthroscopic surgery. Dr. Smith performed the surgery on April 27, 2004. Plaintiff contends that if Dr. Smith had informed him that the surgery would result in plaintiff having a permanent disability, he would not have agreed to the procedure. Plaintiff began physical therapy in November 2004. Plaintiff makes various allegations relating to his care after September 21, 2004. As discussed below, claims based on these allegations are not cognizable as plaintiff could not have exhausted the administrative remedies prior to filing suit.

*Claim 2*

Plaintiff alleges that on September 17, 2003, Dr. Garcia issued a prescription for glasses that was not accurate. Plaintiff alleges that on March 22, 2004, defendant Wessel required him to file another grievance concerning his prescription despite having previously done so. Plaintiff alleges

that defendant Duvall called him on August 30, 2004 to discuss the appeal regarding plaintiff's glasses.  Duvall informed plaintiff that CDC could provide plaintiff another pair of glasses but that plaintiff would have to see Dr. Garcia for a prescription.  Plaintiff objected because he already had obtained a corrected prescription from Dr. Garcia.  Plaintiff states that he appealed this issue further but the appeal was denied.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff's allegations are insufficient to give rise to a claim for relief under section 1983 for violation of the Eighth Amendment.  "Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth

Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff's assertion that if Dr. Smith had informed him that surgery would result in permanent disability, he would not have agreed to the procedure is not sufficient to state a claim for deliberate indifference against Dr. Smith.  Dr. Smith's failure to advise plaintiff of the risks involved in surgery is at most negligence, which does not rise to the level of a constitutional violation.  To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).  "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a section 1983 claim," Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted), and a difference of opinion between medical personnel regarding treatment does not amount to deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  Plaintiff has not alleged any facts that support a claim that any of the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer, 511 U.S. at 837.

Plaintiff's allegations regarding Dr. Garcia issuing an incorrect prescription for glasses are insufficient to give rise to a claim for relief under section 1983 for violation of the Eighth Amendment.  As discussed, mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).  Even gross negligence is insufficient to establish deliberate indifference to serious medical

needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff's allegations regarding the handling of his appeals by defendant Duvall relating to his prescription glasses also fail to state a claim. There is no constitutional right to an inmate appeals process. The Ninth Circuit has held that Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003), *citing* Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). The non-existence of, or the failure of prison officials to properly implement, an administrative appeals process within the prison system does not raise constitutional concerns. Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988). See also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); Flick v. Alba, 932 F.2d 728 (8th Cir.1991); Azeez v. DeRobertis, 568 F.Supp. 8, 10 (N.D.Ill.1982) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment"). A failure to process a grievance does not state a constitutional violation. Buckley, supra. State regulations give rise to a liberty interest protected by the Due Process Clause of the federal constitution only if those regulations pertain to "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995).

Finally, plaintiff's claims regarding his medical care and events occurring after September 21, 2004, the date of filing this action, must be dismissed. Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The section 1997e(a) exhaustion requirement applies to all prisoner suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated. Booth v. Churner, 532 U.S. 731, 741 (2001). "Proper exhaustion[, which] demands compliance with

an agency's deadlines and other critical procedural rules . . . ." is required, Ngo v. Woodford, 126 S.Ct. 2378, 2386 (2006), and must occur prior to filing suit, McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Because plaintiff could not have exhausted claims which occurred after the filing of this action, those claims must be dismissed without prejudice for failure to exhaust administrative remedies.

### B.   Mishandling of Plaintiff's Mail

Plaintiff alleges that the mail system at CSATF/SP has been dysfunctional since his arrival in July 2003. He contends that from October 2003 through February 2004, the delivery of mail to inmates on the B-yard facility averaged from 30-45 days. Plaintiff contends the disruption in mail receipt has adversely affected him in that his medical chronos have been delayed and his legal mail has been delayed.[1]

Plaintiff also alleges that his inmate appeals regarding the mail issues were delayed and improperly denied by Warden Adams.

As set forth in the preceding paragraph, the failure to respond to plaintiff's inmate appeals does not give rise to a claim for relief under the Due Process Clause of the Fourteenth Amendment.

With respect to the First Amendment, prisoners have "a First Amendment right to send and receive mail." Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995). The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell

---

[1] Plaintiff's allegation regarding delay in his legal mail after September 21, 2004 cannot support his claims in this case as plaintiff did not exhaust the available administrative remedies as to such claims prior to filing suit.

1  v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The
2  Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right,
3  within the meaning of section 1983, if he does an affirmative act, participates in another's
4  affirmative acts or omits to perform an act which he is legally required to do that causes the
5  deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In
6  order to state a claim for relief under section 1983, plaintiff must link each named defendant with
7  some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

8       In this instance, plaintiff has not alleged any facts supporting a claim that any of the named
9  defendants tampered with or hindered the delivery or receipt of his mail.  Plaintiff's general
10 allegations that the mail system at CSATF "has been dysfunctional" since his arrival, are insufficient
11 to support a claim that any of the named defendants were responsible.  The complaint is devoid of
12 any factual linkages between an act or omission of these defendants and a violation of plaintiff's
13 constitutional rights.

14      To the extent plaintiff claims the alleged delay in receipt of his legal mail somehow affected
15 his access to the Court's, for the reasons discussed below, this claim also fails.

16      **C.**    **Access to the Court System**

17      Plaintiff alleges that the B-yard facility has recently implemented a policy which prohibits
18 inmates from access to the law library during program modification, i.e. lockdowns or staff training.
19 Due to the recent influx of yard closures, plaintiff alleges his access to the law library has been
20 limited.  He also complains that the law library does not have the Shepard's series for California
21 Reporters and that the recently acquired copy machine in the B-yard law library produces illegible
22 copies.  Plaintiff also appears to contend that his legal mail was delayed thereby affecting his access
23 to the Court system.

24      Plaintiff's allegations regarding the law library and his legal mail fail to state a claim for
25 denial of access to the court system.  A prisoner alleging a violation of his right of access to the
26 courts must demonstrate that he has suffered "actual injury." Lewis v. Casey, 518 U.S. 343, 349-50
27 (1996).  The right to access the courts is limited to direct criminal appeals, habeas corpus
28

proceedings, and civil rights actions challenging conditions of confinement. Id. at 354-55. "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense." Id. at 351. Rather, the inmate "must go one step further and demonstrate that the library or legal assistance program hindered his efforts to pursue a legal claim." Id. The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353. In Lewis v. Casey, the Supreme Court defined prisoners' right of access to the courts as simply the "right to bring to court a grievance." Id. at 354. The Court specifically rejected the notion that the state must enable a prisoner to "litigate effectively once in court." Id. (quoting and disclaiming language contained in Bounds v. Smith, 430 U.S. 817, 825-26 (1977)); see also Cornett v. Donovan, 51 F.3d 894, 898 (9th Cir. 1995) (determining that prisoners' right of access to the courts is limited to the pleading stage of a civil rights action or petition for writ of habeas corpus). Here, plaintiff alleges that his time in the law library is limited and the law library does not have certain materials and equipment. He also generally alleges that he did not receive legal mail in a timely manner. Plaintiff does not allege any "actual injury." Thus, plaintiff fails to state a claim for relief under section 1983.

**D.     Retaliation**

Plaintiff next alleges that he filed an inmate grievance against Officer Garster regarding a cell move. Sergeant Kamal then offered to move plaintiff back to his bunk if he would drop the complaint. Plaintiff states that he declined to drop the complaint and that subsequently, there was a severe decrease in his incoming mail (both regular and legal). He also alleges that officers began referring to him as "Johnny Corcoran" and became indifferent to his needs. Plaintiff contends he was routinely locked out of his housing unit; body and bed searches increased; his property was confiscated and/or destroyed; and he was threatened by staff and other inmates.

Plaintiff also alleges that Officer Avila gave him a serious rules violation for attempting to file an inmate appeal regarding his legal mail.

Plaintiff further alleges that on May 23, 2004, he filed an inmate appeal against Officer B. Eskew regarding the application of his time credits. On July 8, 2004, plaintiff prepared a legal

U.S. District Court
E. D. California                              8

memorandum entitled "Intent to Pursue Litigation," addressed to the Director of Corrections in which he addressed various appeals regarding the mail room, the inadequacy of the law library and his complaint against Officer Garster. Plaintiff alleges that during a July 13, 2004 interview, defendant Lais refused to address plaintiff's allegations that Eskew filed false information with a state agency. Plaintiff alleges that "during this time (July 2004), the incoming and outgoing mail for all inmates in Housing Unit B-1 was severely delayed." Plaintiff alleges that as he pursued the appeal through the administrative process, his legal mail was opened outside of his presence. Further, on September 11, 2004, he was searched by Avila as he exited the law library, which plaintiff contends had never happened before.[2]

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, No. 06-1995, 2007 WL 1374746, *2 (8th Cir. May 11, 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix,

---

[2]Plaintiff's allegations regarding alleged retaliation after September 21, 2004 cannot support his claims in this case as plaintiff did not exhaust the available administrative remedies as to such claims prior to filing suit. These claims will therefore not be addressed by the Court.

423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

Plaintiff's allegations that his mail was withheld or delayed, his property was confiscated and he was given a serious rules violation are sufficiently adverse to give rise to a retaliation claim under section 1983. However, plaintiff's general allegations that he was threatened do not support a claim for retaliation under section 1983. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Further, the mere involvement of some defendants in responding to plaintiff's inmate appeals does not support a claim for retaliation under section 1983. In addition, as noted above, plaintiff's allegations regarding events that occurred after the filing of this action are not cognizable.

Plaintiff has named numerous defendants in this action. In order to proceed with his retaliation claim under section 1983, plaintiff must allege sufficient facts to support a claim that *each* defendant named in the complaint either acted or failed to act in a manner that was adverse to plaintiff and that the defendant did so in retaliation against plaintiff for either litigating in court or

filing inmate grievances.  For example, plaintiff alleges that during the time he was pursuing inmate appeals, his mail was delayed and/or withheld.  However, plaintiff fails to allege who was responsible for the mishandling of his mail.  Given the length of plaintiff's complaint and the number of defendants, the court cannot ascertain which claims against which defendants are cognizable and which are not in light of the fact that the complaint contains a mix of cognizable and non-cognizable claims.  The court will provide plaintiff with the opportunity to file an amended complaint that complies with Rule 8(a) and sets forth for each defendant, *as briefly as possible*, what action that defendant took or failed to take and why (e.g., to retaliate against plaintiff for litigating in court or for filing inmate grievances).  Plaintiff should utilize the legal standards provided in this order for guidance.

**CONCLUSION**

For the reasons set forth above, plaintiff's second amended complaint is dismissed, with leave to file a third amended complaint within thirty days.

Plaintiff is advised Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a  general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's second amended complaint is dismissed; and

2. Plaintiff is granted thirty days from the date of service of this order to file a third amended complaint that complies with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice; the amended complaint must bear the docket number assigned this case and must be labeled "Amended Complaint. Failure to file an amended complaint in accordance with this order will result in dismissal of this action for failure to state a claim and failure to comply with the court's order.

IT IS SO ORDERED.

Dated: **June 2, 2007**            **/s/ Dennis L. Beck**
                              UNITED STATES MAGISTRATE JUDGE